```
 1              IN THE UNITED STATES DISTRICT COURT
 2                   FOR THE DISTRICT OF MARYLAND
 3
 4 UNITED STATES OF AMERICA,
 5       VS.                          Criminal No. S-98-0358
 6 CHRISTOPHER WHITE,
 7       defendant
 8
 9
10
11                                    Baltimore, Maryland
12                                    July 30, 1999
13
14 BEFORE:  His Honor, Frederic N. Smalkin.
15
16                        APPEARANCES
17 For the U.S.A.:
18     James Webster
19     Jamie M. Bennett
20 For the defendant:
21     Anton Keating
22
23
24
25
```

1  make. If it please the Court, I would like to urge upon you
2  that what the government has done, they have speculated too
3  much, and this is gross speculation which could cost and
4  might cost this young man a great period of time, an extra
5  period of time.
6          So I would suggest to you, as you pointed out, it
7  wasn't reasonably foreseeable to suggest that he just went
8  to jail for eight months in 1995 and still knew what was
9  going on on the street and to suggest that he could
10 reaonably foresee these amounts of drugs, I don't think it
11 is fair or accurate and, again, in 1997 when he is off the
12 street for six months, no disputing that, I don't think the
13 drugs should be attributable to him during that period of
14 time.
15         With that I would submit.
16         THE COURT: All right. Well, ever since they
17 decided to make sentencing scientific, without understanding
18 how the process works in real life, it has been very
19 difficult to arrive at drug quantities where there has not
20 been a stipulation.
21         The courts got to be guided, to some extent, by
22 2D1.1. 2D1.1 says that the  --  if I can find it exactly,
23 the commentary. 12. Where there is no drug seizure, where
24 the amount seized, and there were seizures here, where the
25 amount seized does not reflect the scale of the offense the

1  court shall approximate the quantity of controlled
2  substance.  This is not a scientific endeavor.  It is an
3  approximation.  In making this determination, I added that.
4  The court may consider, for example, the price generally
5  obtained for controlled substance, financial or other
6  records, similar transactions in controlled substances by
7  the defendant, and the size or capability of any laboratory
8  involved.
9         This makes it clear that where you have one
10 of these anecdotal evidence type cases like this what is to
11 be involved is an approximation, not only is it an
12 approximation, but it is an approximation with another shot
13 in the dark, it's a bi-level shot in the dark, because not
14 only are we making an approximation on the flimsiest of
15 evidence, we are also called upon to conjure up what is
16 reasonably foreseeable to the defendant, which levels
17 exponential speculation on speculation.  And I am going to
18 call it speculation.
19        The Court of Appeals requires a finding, I am
20 going to make a finding in a minute.  But, no matter how
21 definite my finding is, based on this kind of anecdotal
22 evidence that has come in here, and on a bi-level
23 approximation, and a probing of reasonable foreseeability I
24 guess you could call it a finding if you wanted to be
25 charitable to call it a finding.

1        I am forced by the law to make a finding here, and
2  I shall make a finding, but I want to be point out so that
3  the everbody understands that at the pretense of scientific
4  sentencing that this holds out is just that it is a
5  pretense.
6        It is a matter of making a finding based on
7  evidence that is by its very nature highly, highly
8  imprecise.  One cannot turn something that is imprecise
9  into a precise endeavor simply by saying so.  It's on the
10 same level as admiring the Emperor's New Clothes.  I got to
11 say that, and that is the way it is.
12       Now having said that, the government is entitled
13 to, and I am required to make a finding.  1B1.3 says that in
14 the case of jointly undertaking criminal activity all
15 reasonably foreseeable acts and omissions of others in
16 furtherance of the jointly undertaken criminal activity,
17 that occurred during the commission of the offense of
18 conviction.
19       Here Mr. White was convicted by a jury of
20 conspiracy.  This is not the time or place to revisit that
21 conviction.  If Mr. White feels that he was wrongly
22 convicted he can take it to Richmond.  In Richmond they will
23 sort it all out.  That is what they get paid to do.  There
24 are three judges down there that will listen to the appeal
25 and figure out, Mr. White, whether the evidence was

```
 1  sufficient for a reasonable jury of 12 of your fellow
 2  citizens to find you guilty of conspiracy.  They have found
 3  you guilty of conspiracy, and that is a fact, and you got to
 4  live with it.  I got to live with it.  Mr. Keating has got
 5  to live with it and the prosecution has got to live with it.
 6  That is the way it is, unless and until three judges in
 7  Richmond, actually it only takes two, say that you weren't a
 8  conspirator, but now you are a conspirator.  That is the way
 9  it is.
10             Now, so you do qualify for being sentenced for
11  jointly undertaken criminal activity.  Now the question is
12  what was the scope of the jointly undertaken criminal
13  activity?  In my judgment the scope of this criminal
14  activity and of the operation in the vicinity in which you
15  conspired, and you are being found to be a conspirator, was
16  a vast conspiracy which is responsible for, based on this
17  evidence, at least 30 kilograms of heroin being distributed
18  during the time that you were a member of the conspiracy.
19             Now the fact that you might not have actively
20  participated in every aspect of the conspiracy, the fact
21  that you might have been in jail during certain periods,
22  still means the conspiracy was going on.  And under the
23  theory of conspiratorial liability, the Pinkerton case, you
24  are fully responsibility for the acts of your fellow
25  conspirators.
```

1        There is, however, some mitigation of that in
2   sentencing.  The mitigation of that in sentencing is, unlike
3   the regular Pinkerton theory of liability, you are only
4   responsible for that which is reasonably foreseeable to you
5   in jointly undertaken criminal activity.
6        Now the question is:  Was there jointly undertaken
7   criminal activity.  This is addressed, to a certain extent,
8   in subsection, let's see, it is application note number 2
9   under illustrations, A 6.  Defendant P is a street legal
10  street drug dealer that knows of other street level drug
11  dealers in the same geographic area who sells the same type
12  of drug as he, defendant P and the other dealers share a
13  common source of supply but otherwise operate independently.
14  Defendant P is not accountable for the quantities of drugs
15  sold by the other street level drug dealers because he is
16  not engaged in a jointly undertaken criminal activity with
17  them.
18       In contrast, defendant Q, another street level
19  drug dealer, pools his resources and profits with four other
20  street level drug dealers.  Defendant Q is engaged in a
21  jointly undertaken criminal activity.  Therefore, he is
22  accountable under subsection A1(b) for the quantities of
23  drugs sold by the other four dealers during the course of
24  his joint undertaking with them because those sales were in
25  furtherance of the jointly undertaken criminal activity and

reasonably foreseeable in connection with that criminal activity.

Based on a preponderance of all the evidence that I have considered about this at trial, and here at this sentencing proceeding, I find that you were in engaged in jointly undertaken criminal activity with a number of the other members of this conspiracy, including those who have implicated you, and based on the police officers testimony, other members who did not directly implicate you, but where you were seen performing functions for the Cannady organization.

I do not believe your protestation you are just an independent contractor here operating on your own. I don't think that is what happened.

Furthermore, I think that this activity, even accounting for the periods, the short periods of imprisonment that you did embraced more than 30 kilograms of heroin. And I think all of that should have been and was reasonably foreseeable to the people operating in your level of this organization knowing how much drugs was going out of that operation.

As far as your sister's testimony about what is going on on Whitelock Street, I don't believe it. As far as your testimony about you didn't have anything to do with this conspiracy, I don't believe that either.

```
 1              For the purposes of sentencing the base offense
 2   level is going to be 38, and that is where it is.
 3              There are no adjustments, I assume?
 4              MR. WEBSTER:  One adjustment, Your Honor.  It is
 5   two levels for the gun.
 6              THE COURT:  I will not.
 7              MR. WEBSTER:  As you noted in your April 9th
 8   letter.
 9              THE COURT:  That didn't show up in the Presentence
10   report, did it?
11              MR. GAGEN:  Paragraph 14.
12              THE COURT:  Oh, yeah, it did show up in there.
13              MR. WEBSTER:  And in your April 9th letter, Your
14   Honor, you did say  --
15              THE COURT:  Yeah.  Is there any argument desired
16   on that one?
17              MR. KEATING:  No, sir.  I submit.
18              THE COURT:  There will be a two level adjustment
19   based on my previous findings on the firearm use under
20   2D1.1(b)(1) firearm use and/or possession.  Under the
21   criteria of 2D1.1(b)(1) which gives him a level 40, Criminal
22   History Category Roman Numeral III, and that is a long
23   sentence, 360 months to life.
24              All right.  I am certainly not going to sentence
25   him to anything more than the minimum, unless the government
```